## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

FRANCISCA R. RAMOS,

         Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

         Defendant.

No. C13-4040-MWB

**REPORT AND
RECOMMENDATION**

_____

## I.    INTRODUCTION

Plaintiff Francisca R. Ramos seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Social Security Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Ramos contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled. For the reasons that follow, I recommend that the decision be affirmed.

## II.    BACKGROUND

Ramos was born in 1951 and was 56 years old on her alleged disability onset date of August 22, 2007. AR 16, 25. She attended school in El Salvador through the sixth grade and is not able to communicate in English. AR 25. She has past relevant work as a flower bouquet maker, production worker and burrito maker. AR 25, 229.

Ramos protectively filed her applications for DIB and SSI on December 1, 2010. AR 16. The applications were denied initially and on reconsideration. *Id.* Ramos then requested a hearing, which was conducted December 1, 2011, by Administrative Law Judge (ALJ) Robert Maxwell. *Id.* Ramos testified during the hearing, as did a vocational expert (VE). AR 34-56. The ALJ issued a decision denying Ramos's application on January 11, 2012. AR 16-27. On March 11, 2013, the Appeals Council denied Ramos's request for review. AR 1-3. As such, the ALJ's decision is the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On May 9, 2013, Ramos commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## III.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity.

If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the

claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.    SUMMARY OF ALJ'S DECISION

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

(2)    The claimant has not engaged in substantial gainful activity since August 22, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: Cataracts, glaucoma, diminished vision in right eye (20 CFR 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant is limited visually, no light perception in the right eye, has no restrictions in her left eye, but may be limited to occupations that do not require binocular vision.

(6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on April 11, 1951 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)     The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 404.1564 and 416.964).

(9)     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 18-27. At Step Two, the ALJ found all of the claimed impairments (cataracts, glaucoma and diminished vision in the right eye) to be severe, as they cause more than minimal limitations in Ramos's ability to perform basic work-related activities. AR 18-19.

At Step Three, the ALJ found that none of Ramos's impairments, individually or in combination, met or equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 19. The ALJ analyzed Listing 2.02 (loss of visual acuity), noting that it is satisfied only if the remaining vision in a claimant's better eye, after correction, is 20/200 or less. *Id.* According to the ALJ, the record demonstrates that Ramos has 20/30 vision in her left eye. *Id.* As such, Listing 2.02 does not apply. *Id.* Ramos does not challenge this finding.

At Step Four, the ALJ conducted his RFC analysis and found that Ramos can perform a full range of work at all exertional levels, but with some nonexertional

limitations. AR 19-25. Specifically, the ALJ found that Ramos is limited visually and has no light perception in the right eye. AR 19. He found no restrictions in her left eye but noted that she may be limited to occupations that do not require binocular vision. *Id.* In explaining these findings, the ALJ addressed the relevant medical records, the medical opinion evidence and the credibility of Ramos's allegations concerning the disabling effects of her impairments. AR 20-25.

In discussing Ramos's medical records, the ALJ noted that many are irrelevant, as they either (a) represent periods of time prior to the alleged disability onset date or (b) reflect conditions not associated with the impairments Ramos alleges for purposes of her disability claim. AR 21. The ALJ then summarized the records he considered to be relevant, starting with Ramos's visit to United Community Health Center in July 2007 for pain and blurriness in her right eye. *Id.* During that visit, she was diagnosed with conjunctivitis and cellulitis of that eye. AR 21, 320. One week later, she was examined at Wolfe Eye Clinic and diagnosed with impressive conjunctivitis, Uveitis and a blown pupil of the right eye. AR 21, 299.

On July 21, 2007, Craig Crouch, O.D., diagnosed Ramos with Uveitis with acute glaucoma in her right eye. AR 21, 273. Over the next few months, she was treated with eye drops, medication and, eventually, surgery performed by a physician in California to relieve intraocular pressure. AR 21, 265, 268, 283-85, 301-05. In October 2007, immediately after surgery, Ramos's vision was 20/100 in her right eye and 20/40 in her left. AR 241. During a post-operative examination in November 2007, her vision was 20/50 in the right eye and 20/25 in the left. AR 238.

In December 2007, Alfred Solish, M.D., conducted an examination and found that the October surgery had failed, as Ramos's intraocular pressure was again high. AR 303-04. He diagnosed chronic angle closure glaucoma in the right eye and narrow angles in the left. AR 304. He also found iris increased sclerotomy and performed a slit lamp revision to physically pull the iris out of the sclerostomy. *Id.* He indicated that this

procedure was successful. *Id.* He concluded by recommending that Ramos have an iridotomy in her left eye as soon as possible. AR 305.

The ALJ noted that Ramos continued to see Dr. Solish until September 2008. AR 22. Her left eye improved after the iridotomy but her vision in the right eye deteriorated. AR 22, 306-16. She suffered from swelling, redness and blurred vision in that eye. AR 306-12. As of September 18, 2008, however, Ramos had 20/30 vision in her left eye. AR 306.

The ALJ next noted that Ramos moved back to Iowa and sought no further treatment until January 18, 2011, when she had an eye examination at Vision Care Associates in Storm Lake, Iowa. AR 22, 280. She was found to have no visual acuity in her right eye but 20/30 vision in her left eye. *Id.* One week later, she returned to Vision Care Associates complaining of "a little" discomfort in her left eye. AR 22, 279. She was again found to have 20/30 vision in that eye. AR 279.

The ALJ found no other records of treatment concerning Ramos's eyes. AR 22. However, the ALJ did note that the record contains medical opinion evidence. *Id.* After citing the applicable regulations and rulings, the ALJ analyzed those opinions. AR 24-25. First, he discussed an opinion provided by Dr. Crouch, who performed a visual consultative examination on January 18, 2011. AR 24. Dr. Crouch found that Ramos had no vision in her right eye but 20/30 vision in her left eye. AR 24, 288. He concluded that the visual acuity in her left eye will not restrict any job activities, but her lack of vision in her right eye "will restrict her work activities to jobs which do not require binocular vision." AR 288. The ALJ determined that Dr. Crouch's opinion is entitled to controlling weight. AR 24.

Next, the ALJ discussed a physical RFC assessment dated February 24, 2011, by a consultative examiner, Chrystalla Daly, D.O. *Id.* Dr. Daly concurred with Dr. Crouch's opinion that Ramos's vision does not restrict her ability to work, except for tasks that require binocular vision. AR 24, 296. She also found that Ramos's impairment does not result in significant functional limitations. AR 296. The ALJ gave Dr. Daly's

opinion great weight, finding it to be "fully supported by the medical evidence of record." AR 24-25.

Dr. Daly's opinion was confirmed by another state agency consultant, Laura Griffith, D.O., on April 13, 2011. AR 297. The ALJ found that Dr. Griffith's opinion was entitled to significant weight. AR 25. He also noted that there are no medical opinions in the record that indicate greater limitations. *Id.*

With regard to Ramos's credibility, the ALJ found that her statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent that they are inconsistent with the ALJ's determination of her RFC. AR 22. He provided the following reasons for this finding: (1) Ramos's medical records do not support her claim of total disability, (2) Ramos's activities of daily living are inconsistent with the allegation that she is precluded from all work activities, (3) Ramos has made inconsistent statements concerning matters that are relevant to the issue of disability, (4) the record reflects significant gaps in Ramos's history of treatment and (5) Ramos does not take medication for her symptoms. AR 22-24. For all of these reasons, the ALJ found that Ramos's allegations of total disability are not persuasive. AR 24.

After determining Ramos's RFC, the ALJ found that she is not able to perform past relevant work. AR 25. This finding is somewhat confusing, as it was based entirely on the ALJ's statement that Ramos's RFC limits her "to light unskilled exertional level work." AR 25. In fact, however, the ALJ had previously determined that Ramos's RFC permits her "to perform a full range of work at all exertional levels," but with certain nonexertional limitations. AR 19. Thus, the ALJ may have erred in finding that Ramos could not perform past relevant work.

In any event, at Step Five the ALJ determined that Ramos is able to perform other jobs that exist in significant numbers in the national economy. AR 26. Relying on the VE's testimony, the ALJ found that Ramos is able to perform various bench-work assembly jobs, such as vacuum bottle assembler, glass faucet assembler and desk-pen-set assembler. *Id.* The ALJ noted that according to the VE, there are over 20,000 such

positions in the regional economy and over 50,000 in the national economy. *Id.* As such, the ALJ concluded that Ramos is not disabled within the meaning of the Act. AR 26-27.

## V.     THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VI.    ANALYSIS

Ramos argues that the ALJ's decision must be reversed because it is not supported by substantial evidence in the record as a whole. In support of this argument, she contends:

1.    The ALJ erred at Step Five in finding that Ramos can perform other work.

2.    The ALJ erred in giving controlling weight to Dr. Crouch's opinion.

3.    The ALJ erred in failing to resolve alleged conflicts between Dr. Crouch's opinion and those of the state agency consultants.

4.    The ALJ did not properly evaluate Ramos's subjective allegations.

Doc. No. 7 at 11-21. I will address these arguments in the order Ramos has presented them.

## A.  Did The ALJ Err In Finding That Ramos Can Perform Other Work?

Ramos argues that because of her age and vocational profile, she must be found to be disabled under the Commissioner's regulations. She first contends that when a claimant is found to be unable to perform past relevant work, "the burden of proof shifts to the Commissioner to prove that other jobs exist in significant numbers that the claimant is able to do in her impaired condition." Doc. No. 7 at 11-12. The Commissioner responds, correctly, that this is a misstatement of the law. While the Commissioner has the burden of *production* with regard to evidence of other jobs that the claimant can perform, the ultimate burden of *proof* remains with the claimant. *See, e.g., Goff,* 421 F.3d at 790; *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

Putting this minor kerfuffle aside, the real question Ramos presents is whether the Commissioner's Medical-Vocational Guidelines (Guidelines) direct a finding of disability. She contends that because the ALJ identified only light, unskilled jobs that she can perform, and because she is considered to be of advanced age and unable to communicate in English, she must be found to be disabled. Doc. No. 7 at 10-11. She cites Guideline Rule 203.10, which provides that a claimant who is limited to medium work, is of advanced age, has limited or less education and no previous work experience must be found to be disabled. *Id.* at 11 (citing 20 C.F.R. Part 404, Subpart P, App. 2, § 203.10).

The Commissioner responds by referring to the ALJ's description of Ramos's RFC, in which he found that she is capable of performing a full range of work at all exertional levels, but with some nonexertional limitations. Doc. No. 8 at 21 (citing AR 19). The ALJ contends that because the only limitations contained in the RFC are nonexertional, the Guidelines do not direct any finding. *Id.* Instead, according to the Commissioner, the ALJ was required to consult a VE and was entitled to rely on the

VE's opinion testimony concerning the availability of other jobs. *Id.* The Commissioner further notes that while the jobs identified by the VE were light, unskilled jobs, the VE made it clear that these were only examples of "many jobs" that a person with Ramos's characteristics and RFC could perform. *Id.* (citing AR 53).

The Commissioner is correct. In describing Ramos's RFC, the ALJ found that she has no exertional limitations. AR 19. Unfortunately, the ALJ later clouded the issue by stating that Ramos is limited to light, unskilled work. AR 25. This comment contradicts the ALJ's express RFC finding, as well as the medical opinion evidence of record. None of the medical opinions to which the ALJ afforded weight included a limitation of light work. AR 24-25, 288, 296-97. Indeed, there are no opinions in the record suggesting such a limitation. As such, I can only conclude that the ALJ's comment about such a limitation was simply erroneous. While the error is unfortunate, it does not require reversal. *See, e.g., Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) ("We will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome."). The ALJ's express RFC finding, supported by his detailed analysis of the evidence, provides that Ramos is able "to perform a full range of work at all exertional levels," with only nonexertional limitations. AR 19. Based on that finding, the Guidelines do not direct a finding of disability. *See* 20 C.F.R. Part 404, Subpart P, App. 2; *see also Clark v. Chater*, 75 F.3d 414, 418 (8th Cir. 1996).[1]

**B.    *Did The ALJ Err In Giving Controlling Weight To Dr. Crouch's Opinion?***

In evaluating a claim for DIB or SSI, the ALJ is required to consider all relevant evidence, including medical records and medical opinions. *See* 20 C.F.R. §§ 404.1513,

---

[1] I note that even if the ALJ intended to find that Ramos is limited to light work, Section 203.10 of the Guidelines would not be applicable, as Ramos contends. That Section applies to a claimant with "no" previous work experience. 20 C.F.R. Part 404, Subpart P, App. 2, § 203.10. Ramos has work experience at both the semi-skilled and unskilled levels. AR 25.

404.1520, 404.1520b, 404.1527, 416.913, 416.920, 416.920b.  With regard to medical opinions, the Commissioner's regulations give great deference to those provided by treating health care providers:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight</u>. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) [emphasis added].  This means a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007).  But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  *Hacker*, 459 F.3d at 937.  The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

When a treating provider's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable

of doing despite the impairment, and the resulting restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). However, an opinion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

Here, the ALJ found that Dr. Crouch was a treating source and that his opinion was entitled to controlling weight. Ramos objects to this finding on grounds that Dr. Crouch does not fit the Commissioner's criteria for "treating" status. Ramos points out that the regulations authorize a determination of "controlling weight" only with regard to treating source opinions. Doc. No. 7 at 14 (citing 20 C.F.R. § 404.1527). Thus, Ramos contends, if Dr. Crouch was not a treating physician, the ALJ placed too much stock in his opinion.

To be a "treating" source, a doctor must be an "acceptable medical source" and have an "ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902, 416.913(a). Dr. Crouch, as an optometrist, is an "acceptable medical source" for the purpose of establishing visual disorders. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). Thus, the question is whether he had an "ongoing treatment relationship" such that his opinion is eligible for "controlling weight" status. The regulations describe that concept as follows:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. §§ 404.1502, 416.902.

Ramos contends that Dr. Crouch saw her just "a couple of times" in July and August 2007, before referring her to the Wolfe Clinic. Doc. No. 7 at 14. She then notes that he did not see her again until he performed an examination at the Commissioner's request in January 2011. *Id.; see also* AR 31, 287. By contrast, the Commissioner states that Dr. Crouch saw Ramos up to <u>nine</u> times in 2007 before seeing her again in January 2011. Doc. No. 8 at 16. The Commissioner also refers to Ramos's argument as "moot," noting that the level of weight given to Dr. Crouch's opinion could not affect the outcome of Ramos's claim because there is no conflict among the various opinions of record. *Id.*

I agree with Ramos that it was error for the ALJ to give Dr. Crouch "treating" status. There is no evidence that he had an "ongoing treatment relationship" with her as of January 2011, when he prepared his opinion. He examined her on many occasions over a brief period of time in 2007, AR 282-86, but there is no evidence that he saw her again until he was asked (by the ALJ) to examine Ramos for purposes of her claim. AR 31, 287.[2] The regulations make it clear that an examination conducted "solely . . . to obtain a report in support of your claim for disability" is not part of a treatment relationship. 20 C.F.R. §§ 404.1502, 416.902. Thus, while Dr. Crouch was a treating optometrist for a short period of time in 2007, he had no treatment relationship with her over the next three-and-a-half years. During that time, Ramos obtained extensive care and treatment from other eye doctors. AR 22. The record simply does not support the ALJ's finding that Dr. Crouch was a treating optometrist at the time he issued his consultative opinion in January 2011.

However, I agree with the Commissioner that this issue is purely academic. Had the ALJ chosen to favor Dr. Crouch's opinion over conflicting opinions offered by other acceptable sources, then Ramos would have a legitimate complaint. Here, however, all

---

[2] Ramos made one additional visit to Dr. Crouch one week after he prepared his opinion. AR 279.

of the medical opinions in the record are consistent. Each opinion indicates that the only job-related limitation resulting from Ramos's impairments is that she cannot perform work that requires binocular vision. AR 288, 296-97. The ALJ gave controlling weight to one opinion, great weight to another and significant weight to the third. AR 24-25. By giving controlling weight to Dr. Crouch's opinion, the ALJ necessarily found that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, even though the ALJ should not have given Dr. Crouch's opinion controlling weight, it clearly was entitled to great weight. Given that the opinion is consistent with the other opinions in the record, there is no indication that the ALJ would have decided Ramos's claim differently based on this slight adjustment to the weighting of Dr. Crouch's opinion. As such, the ALJ's erroneous characterization of Dr. Crouch as a treating source was harmless and does not require reversal. *See, e.g.*, *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently … and any error by the ALJ was therefore harmless.").

## C.    *Did The ALJ Err In Failing To Resolve Conflicts Between The Opinions?*

Ramos next contends that there are conflicts among the various medical opinions in the record and that the ALJ erred in failing to address and resolve those conflicts. As discussed above, the opinions appear to be remarkably consistent. However,    Ramos starts her argument with this assertion:   "Dr. Daly found Ms. Ramos has no light perception (NLP) in best correct vision in the left eye." Doc. No. 7 at 15. If this assertion is true, then Ramos might be on to something. However, it is not.

I first note that while Ramos routinely cited to the administrative record with regard to various statements in her brief, this particular assertion about Dr. Daly's alleged finding is not backed by a record citation. *Id.* And, in fact, nothing in Dr. Daly's opinion states that Ramos has no light perception in her left eye. Dr. Daly, based on her review

of records, found that Ramos "has NLP in the <u>right</u> eye." AR 292 [emphasis added]. She then noted various visual limitations and stated that all of them relate to the right eye. *Id.* Meanwhile, she found that Ramos's "[v]isual acuity on the left has been 20/30 best corrected" and that testing "has shown no severe restriction in the good eye." *Id.* Dr. Daly concluded that with the exception of tasks requiring binocular vision, Ramos's impairment "does not result in significant functional limitations." AR 296. The other state agency consultant, Dr. Griffith, affirmed Dr. Daly's opinion. AR 297.

On this record, I have no idea what Ramos is talking about when she complains about inconsistent opinions. Her allegation that Dr. Daly found no light perception in the left eye is simply wrong. In all material respects the opinions of Dr. Crouch, Dr. Daly and Dr. Griffith are consistent. This argument for reversal is baseless.


**D.      Did The ALJ Properly Assess Ramos's Credibility?**

As noted earlier, the ALJ partially discredited Ramos's allegations concerning the intensity, persistence and limiting effects of her symptoms. AR 22. Specifically, he found that those allegations are not credible to the extent that they are inconsistent with the ALJ's determination of Ramos's RFC. *Id.* He provided the following reasons for this finding: (1) the medical records of evidence do not support Ramos's claim of total disability, (2) Ramos's activities of daily living are inconsistent with the allegation that she is precluded from all work activities, (3) Ramos has made inconsistent statements concerning matters that are relevant to the issue of disability, (4) the record reflects significant gaps in Ramos's history of treatment and (5) Ramos does not take medication for her symptoms. AR 22-24. Ramos contends that the ALJ's credibility analysis is erroneous.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional

restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ is not required to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnart*, 393 F.3d 798, 801 (8th Cir. 2005). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008); *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003).

Ramos starts by noting that the ALJ made an erroneous statement concerning Ramos's ability to read and write in English. The ALJ stated that while Ramos cannot communicate in English, she testified that she can read and write in English. AR 23. This statement is incorrect, as Ramos testified that she can read and write in her own language but not in English. AR 37-38. However, Ramos does not explain why this error by the ALJ has any impact on her credibility, or her claim. Indeed, later in his opinion the ALJ found that Ramos is not able to communicate in English and is considered as an individual who is illiterate in English. AR 25. While it is unfortunate that the ALJ's opinion contains this additional error, Ramos has not shown that the mistake is relevant to any material issue.

Ramos's remaining arguments simply take issue with, and suggest another way of looking at, the factors the ALJ cited in support of his credibility analysis. I find that the ALJ's stated reasons for discrediting Ramos's allegations are good reasons, supported by substantial evidence in the record as a whole. The objective medical evidence does not support Ramos's allegations of total disability. Of course, that reason alone is not

sufficient. *See Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010) (ALJ may consider the absence of objective medical evidence to support the complaints, but may not discount subjective complaints solely based on the lack of objective medical evidence). However, the ALJ's other reasons also support his conclusion.

Ramos's daily activities include cooking for herself, doing laundry, cleaning her house, walking, shopping and reading a Spanish newspaper. AR 20, 40-43, 46, 48-49, 192-94, 209-10. It was not improper for the ALJ to find these activities to be inconsistent with Ramos's allegations. *See, e.g., Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001) ("[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.").

Nor was it improper for the ALJ to consider the fact that Ramos takes no medication and went without treatment for substantial periods of time. Indeed, between September 2008 and December 1, 2011 (the date of the ALJ's hearing), the record reflects that Ramos's only visits to a health care provider for vision issues were two visits to Dr. Crouch (one for a consultative examination) in January 2011. AR 24, 279, 288. She did, however, seek treatment for other ailments during that period of time. AR 317-18. Ramos has failed to show that additional vision care was needed, or recommended, but was denied due to an inability to pay. The ALJ was entitled to find that this history tended to show that Ramos's subjective complaints were not fully credible. *See, e.g., Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failure to seek medical assistance contradicts subjective complaints).

Finally, the ALJ pointed to various inconsistencies in Ramos's statements and testimony as providing additional support for his finding that she is not an entirely accurate reporter. AR 23-24. While Ramos now seeks to explain or minimize the

inconsistencies, I cannot find that it was improper for the ALJ to consider them in determining her credibility.

When an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young*, 221 F.3d at 1068 ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted). Here, I conclude that the ALJ provided good, specific reasons, supported by substantial evidence in the existing record, for discounting Ramos's subjective allegations.

## VII.   *CONCLUSION AND RECOMMENDATION*

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **affirmed**, and that judgment be entered in favor of the Commissioner and against Ramos. Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 29th day of January, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE